IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2015 at Jackson

## STATE OF TENNESSEE v. JOSEPH R. VIBBERT

**Appeal from the Criminal Court for Overton County**
**No. 2013-CR-91     Gary McKenzie, Judge**

---

**No. M2014-02034-CCA-R3-CD – Filed September 2, 2015**

---

The Defendant, Joseph R. Vibbert, was indicted for two counts of sexual battery by an authority figure, a Class C felony. <u>See</u> Tenn. Code Ann. § 39-13-527. The Defendant pled guilty to one count of sexual battery, a Class E felony, and the second count was dismissed. <u>See</u> Tenn. Code Ann. § 39-13-505. The trial court sentenced the Defendant as a Range I, standard offender to two years to be served in confinement. In this appeal as of right, the Defendant contends (1) that the trial court erred by denying his request for judicial diversion; and (2) that the trial court erred by denying his request for an alternative sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

John Milton Meadows, III, Livingston, Tennessee, for the appellant, Joseph R. Vibbert.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Mark Edward Gore, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Defendant has failed to include a copy of the plea agreement or the plea submission hearing transcript in the record. Based upon the evidence at the sentencing hearing, it appears that on June 1, 2013, the victim, B.L.,[1] was fifteen years old. The

---

[1] It is the policy of this court to refer to juveniles and victims of sexual offenses by their initials.

victim spent that night at her cousin's apartment, sleeping on the couch. The Defendant was the victim's cousin's boyfriend and also lived at the apartment. The victim told the police that at some point that night she was awoken "by something cold touching her breasts." The victim pretended to remain asleep but pulled her shirt up and "pulled the covers around her tightly." The Defendant stopped touching her, and she fell back asleep.

B.L. stated that later, she woke up to the Defendant pulling the covers off of her legs. The Defendant then "grabbed her hand and put it on his [erect] penis." The victim stated that she "jerked her hand back and put the covers back around her." The Defendant went to see if his girlfriend, the victim's cousin, was still asleep. The Defendant then came back into the room where the victim was and touched the victim through "the cover as if to see where her arms were." The Defendant sat down on the floor and started to play video games while the victim lay on the couch unable to sleep. When her mother picked her up the next day, the victim told her what the Defendant had done to her, and they went to the police.

When he learned that the victim was going to report him, the Defendant went to the police station and told the dispatcher that "a girl was coming in to make allegations against him for touching her, and that he [was there] to dispute [those] allegations." The Defendant spoke with the chief of police and a detective and denied touching the victim "at first." The Defendant eventually told the investigators that the night before he had put his hand under the victim's shirt and bra and touched her breasts for fifteen or twenty seconds. The Defendant said that he then waited ten minutes before he pulled the victim's hand from underneath the covers and put his erect penis in it. The Defendant stated that "he knew what he had done was wrong, and did not know why he" did it.

At the sentencing hearing, it was established that the Defendant had no prior criminal history other than minor traffic violations. The Defendant graduated from high school and had been employed off and on since his graduation. The Defendant underwent a psychosexual evaluation that demonstrated "[p]roblematic scores [that] manifest[ed] some pedophile interest and thinking." The report also listed the Defendant's "impulsiveness score in the severe problem range." The report noted no problems with alcohol or substance abuse but warned of the "possibility of denial of problems" as the Defendant "described certain personality characteristics that are often associated with involvement with alcohol or drugs." Overall, the Defendant was characterized as a moderate risk to reoffend.

Detective Tim Poore testified that he was a detective with the Livingston Police Department and one of the officers who interviewed the Defendant. Det. Poore recalled that the Defendant denied the victim's allegations for "around [twenty] minutes" before "his conscience finally got the better of him," and he confessed. Det. Poore testified that

once the Defendant confessed, there was very little variance between his statement and the victim's. Det. Poore also recalled the Defendant saying that he stopped because he "knew it was wrong." Later, Det. Poore testified that the Defendant did not confess until after he had been "confronted [] with the complete evidence."

The victim's mother, B.M.,[2] testified that since this incident, the victim's grades have fallen, and she was "fighting in school." B.M. explained that the Defendant's sister went to school with the victim and caused her peers to call the victim names and laugh "at her for what had happened." B.M. testified that the victim had to switch schools because of the abuse from her peers and that they are planning on moving out of the state. B.M. explained that they are moving because "of the way people look at my child after what had happened, and people sit there and gossip, and talk, and put it on Facebook." B.M. further testified that the Defendant had posted about the incident on social media. B.M. also testified that, since the incident, the victim had suffered from post-traumatic stress disorder, had to undergo counseling, became afraid of the dark and to sleep alone, and became angry at "people in general." Additionally, B.M. testified that the Defendant had dated the victim's cousin for almost two years and "was around the family," having been at "Thanksgiving dinners" and "Christmases."

The Defendant testified that he was nineteen at the time of the offense, that he "really [did not] know why [he] did it," that he "shouldn't have done it," that "it was a poor decision on [his] behalf," and that he "really [was] truly sorry." The Defendant further testified that since the incident, he had gotten married and moved to Kentucky, where he worked for his wife's grandparents. The Defendant disagreed with Det. Poore that it took him twenty minutes to confess. The Defendant claimed he only denied the allegations for "five or ten" minutes before he "got guilty" and "fessed up." The Defendant also testified that since he confessed, he had complied with all that had been required of him, participating in the presentence report and psychosexual evaluation, registering as a sex offender, and turning himself in when he was indicted.

The Defendant complained that he had lost two jobs since he touched the victim and testified that he "bottomed out" when he lost his first job. The Defendant explained that he "had no money" and "lost [his] car," so he left town "for a week or so" to go to his father's house and "have a little fun." The Defendant admitted that he posted about what he had done on social media but claimed that he "just said that [he] was sorry and [he] wished [he] hadn't [] done it." The Defendant reiterated that he was "sorry for doing it." The Defendant testified that he just wanted "to do [his] time" and "to move on with [his] life."

---

[2] In order to protect the privacy of the victim, we will refer to her mother by her initials.

When asked on cross-examination whether he touched the victim "for sexual arousal and gratification," the Defendant responded that he did not "know why [he] did it" but that he knew he "shouldn't have." The prosecutor asked the Defendant why he "shouldn't have," and the Defendant responded "[b]ecause it was wrong . . . [y]ou just don't do that." The prosecutor continued to press the Defendant on whether he touched the victim for sexual arousal or gratification, and the Defendant responded that he guessed he touched her because "she was a female." The Defendant also admitted on cross-examination that his first instinct was to try to beat the victim to the police station and deny her allegations. The Defendant admitted that he lied to the police about what had happened when he first spoke to them.

In denying judicial diversion, the trial court stated that there were "some things that" gave it "concern" about the Defendant's amenability to correction. The trial court stated that "the first thing that [the Defendant] did was try to cover his tracks" and that it thought that was "very telling of what we're dealing with." As such, the trial court gave little weight to the Defendant's amenability to correction. The trial court also stated that the circumstances of the offense were "very serious in nature." The trial court noted that the offense was "extremely serious" given that the Defendant was staying in an apartment with a juvenile and that after "inappropriately touch[ing] this child once," he "came back and did it again" following "a break." The trial court acknowledged that the Defendant's criminal record and social history both weighed in favor of granting diversion.

The trial court stated that it had "some concerns" about the Defendant's physical and mental health based upon the psychosexual evaluation. The trial court noted that "some of the [evaluation] scores" suggested that the "possibility of reoffending [was] high." With respect to the deterrence value to the Defendant, as well as others, the trial court asked "what kind of message are we sending if we give diversion" in this situation. The trial court once again pointed out that the victim was a juvenile and that the Defendant had known her from "family events." The trial court also noted that the Defendant was originally charged with sexual battery by an authority figure, which was a nondivertible offense. The trial court stated that, given the proof, the State "may have [had] a run at that if they went to trial."

The trial court also stated that it did not believe that judicial diversion would have served the interests of the public or the Defendant in this case. In conclusion, the trial court stated that it had "some real concerns about [the Defendant's] candor" at the sentencing hearing. The trial court stated that its decision rested "highly on the circumstances of the offense" coupled with the deterrence value to the Defendant as well as others. The trial court also stated that it was "real concerned about the position of private trust that [the Defendant] had in this situation."

The trial court then enhanced the Defendant's sentence to the maximum two years, finding that the Defendant had abused a position of private trust. Tenn. Code Ann. § 40-35-114(14). The trial court explained that the Defendant was "involved with this family" and that "they knew who" he was. The trial court further explained that, had the Defendant "been a stranger that [the victim's family] didn't know, who their cousin was dating, they likely would not have let her stay there." The trial court concluded that "because they knew who [the Defendant was] . . . there was some trust placed in [him]."

The trial court next addressed whether the Defendant would receive an alternative sentence. The trial court stated that the Defendant did not have a long history of criminal conduct and that he had not had measures less restrictive than confinement frequently or recently applied unsuccessfully to him. However, the trial court stated that it thought confinement was necessary to avoid depreciating the seriousness of the offense or to provide an effective deterrence to others. The trial court reiterated that it was not sure that the Defendant had been candid at the sentencing hearing about "why [he] did what [he] did," that the Defendant had abused a position of private trust, and that it placed great weight on the seriousness of the offense. The trial court then stated that "on top of that, [the Defendant] went to the police to file a false report accusing [the victim] of lying." As such, the trial court ordered the Defendant's sentence to be served in confinement.

## ANALYSIS

### I. Judicial Diversion

The Defendant contends that the trial court erred by denying his request for judicial diversion. The Defendant argues that the trial court erred in weighing the applicable factors by not placing enough weight on the Defendant's lack of criminal history and amenability to correction. The State responds that the Defendant has failed to show that the trial court abused its discretion in denying judicial diversion.

There is no dispute that the Defendant was eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). The decision to grant judicial diversion lies within the discretion of the trial court. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). If the trial court has placed "on the record its considerations for the grant or denial of judicial diversion, the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion." State v. King, 432 S.W.3d 316, 319 (Tenn. 2014). We may not revisit the issue so long as the record contains any substantial evidence to support the trial court's action. Parker, 932 S.W.2d at 958.

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's mental and physical health; (6) the deterrent effect on the sentencing decision to both the defendant and other similarly situated defendants; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing Parker, 932 S.W.2d at 958); see also King, 432 S.W.3d at 326 (reaffirming that the Electroplating requirements "are essential considerations for judicial diversion").

A trial court is "not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness." King, 432 S.W.3d at 327. "[T]he record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it." Id. Additionally, the trial court "must weigh the factors against each other and place an explanation of its ruling on the record." Id. at 326. When the trial court does so, "the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." Id. at 327.

Here, the trial court considered all of the Parker and Electroplating factors, specifically identified the relevant factors, and placed its reasons for denying judicial diversion on the record. As such, the presumption of reasonableness applies to the trial court's decision so long as there is any substantial evidence to support the decision. The trial court relied heavily on the circumstances of the offense and the deterrence value to the accused as well as others. With respect to the deterrence value, while the Defendant had apologized for his actions several times, the Defendant was more concerned at the sentencing hearing with how his arrest had affected him and his desire "to move on with [his] life" than the significant and destructive impact his actions had on the victim.

With respect to the circumstances of the offense, the victim, a juvenile staying at the Defendant's girlfriend's apartment, was touched by the Defendant while she slept. She awoke to the Defendant touching her breasts, and she covered herself up in an effort to stop the Defendant. The Defendant then waited several minutes until the victim fell back asleep to put his erect penis in her hand. While the Defendant asserted that he stopped because he "knew it was wrong," the victim stated that this second encounter ended when she jerked her hand away and covered herself up again.

The Defendant then went to ensure that his assault on the victim did not wake up his girlfriend. After checking on his girlfriend, the Defendant touched the victim a third time, feeling over the covers for her arms, and then sat down and played video games near the victim as she lay on the couch frightened and awake the rest of the night.

Afterwards, the Defendant attempted to discredit the victim by lying to the investigators when he found out that she had gone to the police. Given these facts, we agree with the trial court that the circumstances of the offense were "very serious in nature." Accordingly, we conclude that the trial court's denial of judicial diversion was supported by substantial evidence.

With respect to the Defendant's argument that the trial court placed too little weight on his amenability to correction, we note that a defendant's credibility is a relevant consideration in assessing his amenability to correction. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). The Defendant admitted at the sentencing hearing that he lied to the investigators in an effort to discredit the victim and dispel her allegations. The trial court was also troubled by the Defendant's repeatedly stating that he did not know why he touched the victim and denying that he did so for the purposes of sexual arousal or gratification. This court gives great weight to a trial court's credibility determinations at a sentencing hearing absent "evidence in the record clearly preponderat[ing] against [those] findings." State v. Melvin, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995). Nothing in the record preponderates against the trial court's determination regarding the Defendant's credibility.

The Defendant also argues that the trial court erred by mistakenly stating that the psychosexual evaluation stated the Defendant's "risk of reoffending was high." The Defendant is correct that the psychosexual evaluation stated that his risk of reoffending was only moderate. However, the trial court addressed this with respect to the Defendant's physical and mental health and did not place a significant amount of weight on this factor. Instead, the trial court relied on the circumstances of the offense and deterrence value. Based upon the foregoing, we conclude that the Defendant has not overcome the presumption of reasonableness granted to the trial court's denial of judicial diversion nor has he shown that the trial court abused its discretion in this regard. Accordingly, we affirm the trial court's denial of judicial diversion.

## II. Alternative Sentencing

The Defendant contends that the trial court erred by denying his request for alternative sentencing. The Defendant does not challenge the length of his sentence, but he argues that the trial court misapplied one of the enhancement factors, that the Defendant abused a position of private trust. The Defendant also argues that the circumstances of the offense were not egregious enough for the seriousness of the offense alone to warrant a denial of alternative sentencing and that there was no evidence that the denial would have a deterrent effect within the jurisdiction. The State responds that the trial court did not abuse its discretion in denying the Defendant alternative sentencing.

On appeal, the burden is on the defendant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts. Our supreme court has held that an "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

     (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

     (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

     (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

With respect to the Defendant's argument that the trial court misapplied an enhancement factor, that he abused a position of private trust, we will not address whether the trial court erred in that regard because the Defendant does not challenge the

length of his sentence on appeal. The fact that the Defendant knew the victim, had been, "involved with [her] family," and that the victim was a juvenile were all circumstances of the offense for the trial court to consider in its decisions regarding judicial diversion and alternative sentencing.

As for the Defendant's argument that the offenses were not egregious enough for the seriousness of the offense alone to warrant a denial of alternative sentencing, we note that the trial court did not deny alternative sentencing solely on the basis of avoiding depreciating the seriousness of the offense. See State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). In denying alternative sentencing, the trial court relied on what it perceived to be the Defendant's lack of amenability to correction due to his lack of credibility and candor. The trial court also relied on the circumstances of the offense.

With respect to the Defendant's argument that there was no evidence that the denial would have a deterrent effect within the jurisdiction, we note that it appears that the trial court recited all of Tennessee Code Annotated section 40-35-103(1)(B), which allows for denial of alternative sentencing based upon the need to avoid depreciating the seriousness of the offense or to deter others. Nothing in the trial court's ruling suggested that it relied on the deterrent effect on others in denying alternative sentencing. Based upon the foregoing, we conclude that the trial court considered the applicable sentencing factors and did not abuse its discretion in denying the Defendant alternative sentencing. Accordingly, we affirm the trial court's denial of alternative sentencing.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE